IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JENNIFER WILLIAMS,

    Plaintiff,

    v.

BIG LOTS STORES, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:07-CV-1593-TWT

ORDER

This is a personal injury action. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 22]. For the reasons set forth below, it is DENIED.

I. Introduction

On the evening of June 15, 2005, the Plaintiff went to the Defendant's store in Lilburn, Georgia to shop. The Defendant, Big Lots, describes itself as the nation's largest broadline closeout retailer. See BigLots.com, Homepage, www.biglots.com (last visited July 16, 2008). During her shopping trip, the Plaintiff claims she spent five to ten minutes perusing a particular food aisle. (Williams Aff. ¶ 6). As she was making her way down this aisle, she slipped while alongside a shelf containing cooking oil. According to the Plaintiff, this caused her to scratch her leg on the

shopping cart and ultimately sprain her ankle. (Williams Dep. at 38-39). Immediately afterward, the Plaintiff claims, she noticed she was standing in a puddle of oil approximately the size of the base of a "gallon milk jug." (Id. at 42). Upon further examination, the Plaintiff identified the culprit as a series of shelved Wesson Oil bottles. These bottles had allegedly leaked to various stages of emptiness and were oily to the touch. (Id. at 41, 43). The Plaintiff claims that her tracks could be traced by the oil from her shoes as she walked to the storefront to report the incident to two cashiers named Geraldine and Merle. (Id. at 47). Those employees - according to the Plaintiff - then summoned an assistant manager from upstairs to investigate the alleged oil spill. (Id. at 49). The assistant manager immediately paged an employee up to the front and allegedly scolded him for not properly monitoring the floor. (Id. at 50). The assistant manager then escorted the Plaintiff to the scene of the incident, where the assistant manager confirmed that some amount of oil was on the floor. (Morrison Dep. at 94).

That assistant manager was Doreen Morrison, who - no longer employed by the Defendant - relates a different side to the story. Morrison's ten hour shift was coming to an end. She claims to have spent her shift, as she usually did, roaming up and down the aisles every twenty minutes to thirty minutes. (Id. at 41). In fact, Morrison testified she was startled when she went to the storefront to investigate the Plaintiff's

incident: "[T]he minute I heard she slipped on oil, I said to myself, well, it's kind of hard to do that; there wasn't any there a few minutes ago." (Id. at 50). It just so happened that Morrison specifically remembered realigning the row of the Wesson Oil bottles approximately five to ten minutes before the incident was reported. (Id. at 48). As she realigned the oil bottles on the shelf, Morrison made sure to tighten the screw caps - she is a professed "stickler" for tightened caps in her personal shopping - and gave the bottles a "good look" to ensure they were dry and not leaking. (Id. at 48, 86). And under Morrison's account, the oil spill shrunk from the size of a gallon jug's base to less than a teaspoon. (Id. at 100-101). The oil, Morrison relates, appeared to have been "smeared" or "scuffed" (but not "splattered") onto the floor. (Id. at 100, 105). Morrison was unable to confirm that the clear, teaspoon-sized puddle was the same cooking oil as came from the bottles on the shelf. (Id. at 104). According to Morrison, she reinspected the Wesson Oil shelf and found no suspects for the oil on the floor - no opened or leaking bottles, no oil on the shelf, and no trail on the floor. (Id. at 102).

In June 2007, the Plaintiff filed suit in the State Court of DeKalb County, Georgia seeking recovery for injuries that allegedly resulted from the incident. The case was removed to this Court. The Defendant now moves for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Under Georgia law, "[p]remises liability cases are not susceptible to summary adjudication except where the evidence is plain, palpable, and undisputed" that the plaintiff had (or should have had) knowledge of the hazard equal to or greater than the knowledge of the defendant. Hagadorn v. Prudential Ins. Co., 267 Ga. App. 143, 145 (2004). At the same time, however, an inference only creates a genuine issue of fact when it is reasonable and amounts "to more than mere speculation, conjecture, or possibility." Kmart Corp. v. McCollum, 290 Ga. App. 551, 555 (2008).

## III. Discussion

Georgia's premises liability statute provides that:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

O.C.G.A. § 51-3-1. A plaintiff must prove that: (1) the owner had actual or constructive knowledge of the hazard; and (2) the plaintiff lacked knowledge of that hazard despite the exercise of ordinary care. Pirkle v. Robson Crossing, LLC, 272 Ga. App. 259, 260 (2005). The Plaintiff has not alleged the Defendant had actual knowledge of the hazard, and the Defendant does not claim that the Plaintiff had knowledge of the hazard despite her ordinary care in this motion. A plaintiff may show constructive knowledge by either showing that: (1) evidence that an employee was in the immediate vicinity at the time of the incident and easily could have seen and removed the hazard; or (2) the hazard had been on the floor so long that the Defendant should have discovered and removed it prior to the accident as part of a reasonable inspection procedure. Markham v. Schuster's Enterprises, Inc., 268 Ga. App. 313, 314 (2004).

In this case, the Plaintiff asserts only that the Defendant failed to discover the alleged oil spill as part of a reasonable inspection procedure. The Plaintiff alleges the Defendant both lacked a reasonable inspection program and failed to implement it.

(Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 14). It is a well-settled rule that - regardless of a Defendant's compliance with an inspection program - "[i]n cases where a proprietor has shown that an inspection occurred within a brief period prior to an invitee's fall . . . the inspection procedure [is] adequate as a matter of law." Matthews v. The Varsity, Inc., 248 Ga. App. 512, 513 (2001); see also Markham, supra; Medders v. Kroger Co., 257 Ga. App. 876, 878 (2002). Here, the assistant manager Morrison testified that she was on the Wesson Oil food aisle "[f]ive or ten minutes before the incident took place." (Morrison Dep. at 48). Once a defendant introduces evidence - even if only "uncorroborated" testimony - to show that an employee inspected the allegedly hazardous area, Georgia courts have been reluctant to deny summary judgment in the absence of "uncontradicted testimony." Markham, 268 Ga. App. at 315. For example, contradictory evidence is "mere speculation" even where an employee inspects an area whilst "in a hurry because it was time for her to leave and she was looking at her watch." Medders, 257 Ga. App. at 878.

In this case, the Plaintiff does not dispute that Morrison failed to inspect the aisle properly, but instead argues that Morrison was not even present in the aisle in the preceding minutes before the incident. The Plaintiff attempts to refute Morrison's magic words (that she inspected the aisle minutes before the incident) with her own. In the words of the Plaintiff, when she reached the aisle with "spices, sauces,

condiments, seafood seasonings and cooking oils . . . I pushed the shopping cart slowly browsing on the right and left sides of the aisle. I was in this aisle for approximately five to ten minutes before I came to the end of the aisle where the cooking oil and fish seasoning products were located." (Williams Aff. ¶¶ 5-6). Naturally, during this time, the Plaintiff did not see Morrison in the aisle. (Id. ¶ 7). The Plaintiff's affidavit should be enough to defeat summary judgment, and other evidence reinforces a material issue of fact as to Morrison's presence on the aisle. For instance, when the Plaintiff reported the incident to the storefront, Morrison claims that she was just around the corner. (Morrison Dep. at 90). Yet the Plaintiff insists that Morrison had to be summoned from "upstairs" in the back of the store. (Williams Dep. at 49). After the Plaintiff reported the incident, Morrison allegedly admonished an employee for failing to properly monitor the aisle floors. Id. at 50).[1] Further, Morrison admitted that the substance on the floor was oil. (Morrison Dep. at 105). She also testified that she would have noticed any oil on the floor because of its shine and the narrow width of the aisles. (Id. at 104, 49). But, in her alleged previous inspection, Morrison did not notice any oil. Having determined that a question of fact exists as to whether Morrison had inspected the aisle five to ten minutes before the

---

[1] Because the Defendant did not challenge the admissibility of this testimony in their briefing for this motion, I make no determination as to whether this alleged exchange is hearsay or a hearsay exception under the Federal Rules of Evidence.

incident, it is now necessary to examine whether the Defendant and its employees were conforming to a reasonable inspection procedure the night of the incident.

"Constructive knowledge may be inferred where there is evidence that the owner lacked a reasonable inspection procedure." Davis v. Bruno's Supermarkets, Inc., 263 Ga. App. 147, 148 (2003). The proprietor can only show a lack of constructive knowledge if it both had a reasonable inspection program and that it was implementing the reasonable inspection program at the time of the incident. Id. The Defendant had a written inspection program which required inspecting the sales floor every two hours. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 4). Generally, a court should not:

> conclude as a matter of law that [a proprietor's] inspection procedures were reasonable under the circumstances. The length of time the substance must remain on the floor before the owner should have discovered it and what constitutes a reasonable inspection procedure vary with each case, depending on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location. . . . Thus, an inspection may be required more frequently than every 30 minutes.

Shepard v. Winn Dixie Stores, Inc., 241 Ga. App. 746, 748 (1999). Not only would it be improper for the Court to categorically declare that the Defendant's inspection procedures were proper, but there is also evidence that the Defendant and its employees did not adhere to it. Blocker v. Wal-Mart Stores, Inc., 287 Ga. App. 588, 592 (2007) ("[I]n the absence of evidence that [the defendant] actually carried out its

inspection procedures, we cannot say that [the defendant] has shown, as a matter of law, that it lacked constructive knowledge of the hazard.") (citation omitted). Ms. Morrison was unaware of the formal inspection policy. (Morrison Dep. at 59). Morrison admitted there was no written documentation or schedule showing when employees checked the aisles. (Id.) Further, the Defendant deployed two "recovery" employees - workers who generally kept the store clean - during night shifts. (Id. at 32). Morrison stated that it might take those two recovery employees all night to nearly cover the entire store just once - let alone every two hours. (Id. at 38). These admissions cast into doubt whether the Defendant's inspection program was being properly implemented. Therefore, there is a question of material fact as to: 1) whether the Defendant had a reasonable inspection program; and 2) whether it was being executed.

## IV. Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 22] is DENIED.

SO ORDERED, this 28 day of July, 2008.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge